And this morning, we will wind up with a good bankruptcy case, the case of Inouye Overlaw Investments v. Mountainfield Properties. I gather you're Ms. Horwitz, right? Yes, Your Honor. Kelly Horwitz on behalf of appellant Teng Huang. Please proceed. Okay, and I intend to reserve five minutes. Okay, we'll try to help you. Okay. Your Honor, as I was preparing for this oral argument, it occurred to me that perhaps things have become a little bit unduly complex. And I'd like to refocus this case on what I believe is the simplicity of it. My client, Teng Huang, put up $30 million as personal funds to provide security so that Magnus could receive a loan, which in turn allowed it to continue operating for about a year and a half before it sold its assets and retained its real property, which was at risk of foreclosure. That, in and of itself, is sufficient to state an unjust enrichment claim, which was the basis for Teng Huang's $30 million claim in the bankruptcy court. It became unduly complicated when the bankruptcy court latched onto the idea of this just being an incidental benefit to Magnus. But with respect, I mean, you're maybe going to say this, but it's important that you do so. Sure. The way your client dealt with this to get this done was almost entirely for his personal benefit. So you get down to the question of was there a breach of fiduciary duty? Wasn't there a breach? And if he structured this in a way that basically tried to repay him for the loan and didn't benefit anybody else, whether the bankruptcy court was correct. Isn't that really what we're dealing with here? Your Honor, respectfully, I would disagree with that because when you look at really what the focus needs to be on is the $30 million. Now, why is that? I mean, the $30 million to start with, I don't think anybody had a problem with that. What happened is when that wasn't enough and they went to the second sniff, that's the problem we're dealing with here, isn't it? Again, Your Honor, I beg to differ. I think that the clarity that we need in this case comes from the California Supreme Court's case in Hartford. And the California Supreme Court very simply stated what is required when you're looking to find an incidental benefit to a party. And that quote says, When a person acts simply as she would have done in any event, out of duty or self-interest, she cannot equitably claim compensation from anyone who merely happens to benefit as a result. So let's break that down. There is no showing, and it's, I think, a ridiculous concept, that Teng Huang would have put up $30 million in any event if Magnus wasn't part of this equation. He wasn't doing it for himself, solely out of his self-interest. Okay, we started out that way. Then we went to the second step. Is there any evidence that suggests that anybody but him would benefit? Yes, Magnus benefited. But isn't he Magnus? Under the law, he is not Magnus. Magnus is its own separate entity. I understand, but isn't he the 100% owner or largely owner? He is the supermajority owner. Okay. Absolutely. But if we're going to then disregard the corporate form with no evidence that it should be, we're really on a slippery slope under California law. California law has recognized that an owner of an LLC, or really any other business entity, is going to have an alignment of interests with the LLC. And that's why it's important to go back to the legal standard, legal requirement, that you ask, was he doing this? Was he putting forward the money as he would have done in any other event? And was Magnus merely happening to benefit? Now, Magnus was the intended beneficiary of this entire transaction. The fact that Ten Huang also has a financial interest in Magnus is not the relevant inquiry under the law. And as I have said in our papers, if you believe it, perhaps this is a unique intersection of California law. On the one hand, of the fiduciary duties and law governing the interests of an owner versus incidental benefit and what it means to be operating out of one's self-interest in a corporate setting. Is there an allegation, are you dealing with an allegation that somehow Ten Huang breached his fiduciary duty in some way as the head of the entity? That is an argument that has been advanced in this case or that the bankruptcy court found. So we're operating there with the presumption that Ten Huang didn't do anything detrimental. He didn't breach his fiduciary duties. And again, I submit we don't need to go there. If we just focus on he presented $30 million. I'm going to do this so that you can continue operating. You, the separate legal entity that I am instilling a benefit upon. What percentage of the entity did he own at that point? That is a matter of dispute that's being resolved as we speak through the state court system. Either 65%, I believe Magnus members admit that he's at least a 65% owner. He would assert that he's a 99% owner. Let's say, let's take his perspective. If he's a 99% owner and he advanced money, it's fairly reasonable to say that he's got some self-interest there, right? Yes. Respectfully, I'd say that the reason that the Supreme Court looks at whether one is acting as they would have done otherwise, is because probably other than maybe Mother Teresa, there's always going to be an element of self-interest in everyone's transactions. Is he a real party of interest in this case? He's not. Bless her heart. So that's why I think it's important to go back to the Supreme Court's language and understand how do we define self-interest? How do we determine when one has stepped over the line of self-interest? So we can look at the language as to incidental benefit under the Hartford case. And the other place where we look is the law governing LLC member managers, which recognizes that a member manager is going to benefit from his transactions on behalf of a corporation. And the line that has been drawn under those authorities is when he acts in a way that's detrimental to the LLC, that he's crossed the line, and then he's acting in his self-interest. And we don't have that in this case. We don't have that showing. We don't have that finding. You don't have that showing, or there's no law that could back it up? If you could clarify, Your Honor. Theoretically, as a 99 percent owner, if he took a position that was contrary to the interests of other interests in the entity, at least arguably he could be found to have violated fiduciary duty, right? Argumentative, that's all I'm saying here. Right, right. Okay, so that's the case. It seems to me what the district court, what the bankruptcy judge did in this case was to say, you know, this is all on self-interest. It affected these other people, so I'm not going to allow this to be treated as unjust enrichment, because it was all for his benefit, right? I do believe that's the direction in which the bankruptcy court, and I believe that that was erroneous. Okay, and your best argument for that is the California Supreme Court case that you cited. That and the law, when you look at what the bankruptcy court said, was evidence of acting in his own interest. It was things like arranging a loan. It was deciding that he wanted a loan rather than a personal investment. These are all normal activities of a member manager. Indeed they may, but let's just say, arguendo, that he had simply invested his personal money. Now, some might say, well, why would you do that? That would really be dumb. But by doing it by way of a loan, he increased the likelihood that he would recover some portion of it. I mean, as you know very well, as an expert in the area, that using loans for things like this is quite common. But there are also, if you will, downsides to it. He invested this equity investment. It wouldn't be here. It's what happened with the loan and what happened to the other people who, if you will, were injured by the way this was structured. Right? Yes, that is the focus in the bankruptcy court at this time. But, of course, Tang Wong had no obligation to put forward any money. He did not. That's correct. And if he had not done that, the whole thing would have collapsed and gone down, right? Correct. And he already invested. He already invested everything, right? That entity. Correct. As well as? Other people. Other investors. So, he made a business decision. I'm not criticizing it. On behalf of the LLC. He made a decision. Let's keep this alive, but let's do it in the form of a loan because it's going to benefit me more. It's a better deal for me. So, that happened. So, it still fails. So, he now wants to try to, if you will, improve his situation as much as he can to the detriment of the other holders of interest in that entity. Is that a fair statement? I guess I would look at it as he, in some respects, was foreclosing Nelson Wong's plan to act in a different way to the detriment of investors where Nelson Wong was going to foreclose and wipe out everyone else's investments. In this case, Ten Wong has preserved assets that not only is he laying claim to, but, of course, the other parties all are able to lay claim to. How many of those assets? The assets that remain? I want to say it's roughly in the area of $21 million. So, nobody is going to get fully reimbursed. Your Honor, I would like to reserve the rest of my time with this. Excuse me. Okay. Thank you. Very well. Okay. So, we're now going to hear from Mr. Schultz. Good morning. May it please the Court. Nathan Schultz, appearing on behalf of the Appellee's Mountain Field Property, LLC, and also Nelson Wong, Richardson, Litherton, and Stone Group, LLC. Your Honor, I have one housekeeping item. We made a mistake in our brief, and my opposing counsel noted in footnote two of their reply brief, and I just wanted to acknowledge that they're right and apologize to the Court for error in the citation of something they have said in their brief. But on to the merits, I'd like to start with the big picture and a few policy considerations before getting into the finer details, in addition to addressing any questions that the Court might have along the way. In terms of big picture, I think what's clear from this somewhat Byzantine record and the opening argument is that this case really poses a high risk of triggering the old maxim about bad facts making bad law. Because Tang, and I refer to him as Tang because one of my clients is Nelson Wong, and Mr. Wong gets pretty confusing, so no disrespect intended. Tang asked this Court to make new California law by recognizing an LLC member manager exception to the incidental benefit exception, the unjust enrichment exception, to the general proposition that liabilities are a matter of contract, tort, or statute, not equity. And Tang has to resort to the equitable doctrine of unjust enrichment because he can't rely on a contract, a statute, or a tort to recover here. The essence of his position is that it's not fair for him to give no incremental benefit for the $30 million he says he provided to fund the Nanyang Bank letters of credit. But fairness and equity are holistic concepts. They don't just derive from the end result, but they also have to account for how do we get there. And here, the undisputed facts established largely by his own testimony show that Tang has within his full control every opportunity to prevent the result for which he now seeks relief. Tang could have documented these reasons. We don't have the issue of unjust enrichment here writ large. We just have the issue of whether or not the unjust enrichment claim was correctly disposed of under the incidental benefits principle. There may be additional arguments to be made about whether or not the claim for unjust enrichment succeeds, but all we have is was the incidental benefits principle correctly applied to bar the claim at this stage. Isn't that correct? I think that's right, Your Honor, with two caveats. One is that the incidental benefit principle isn't really an exception at the end of the day. It's really just an articulation of a subspecies of what's unjust about something. Is it unjust that the result that's here happened, and should we correct it? And so I do think that even incidental benefit, you know, written narrow, requires you to look at unjust fairness. Was this fair, number one? And number two, the Court, of course, can affirm on any grounds in the record, and I think there are some clear ones here. But when you talk about unjust, again, this could have been prevented in any number of ways, and the ways that it could have been prevented reveal that Tang was acting in his own interest. He could have documented an agreement for this and said it was a loan. He didn't do that, you know, possibly because he would have then had to confront the fiduciary duty issues. Are the terms of that loan consistent, you know, with the duty of loyalty? Should we get a disinterested member or a neutral third party to approve that, which is standard practice in distressed lending situations? He could have bought the name-name bank loan and then, you know, worked it out himself, again, removing the urgency of the potential default and foreclosure on his letters of credit. He could have filed a bankruptcy case, which ultimately happened. I don't think for some of the actions you're enumerating, you know, would be in some senses more favorable to him than the one he picked. Perhaps. They might not. How is he acting in self-interest by putting himself out on the limb with no writing and no protection? And, you know, the line of credit gets called, and then he's out $30 million. One way is that it preserves optionality. It leaves this murky, because nobody knew where this was going to go. Everybody thought this property was worth a lot of money and that there would be other funding. He says it himself. And his $30 million forward gives you the 18 months to try and realize what you just said was, you know, an effort to try and get the funding to develop this valuable property. True, but with one significant consequence, at least, that it puts him in the ability to argue control and make the exact kind of arguments he's making in this bankruptcy case and with respect to this claim, which is, hey, it was all mine anyway. It all belongs to me. Look, I put this money in, and skipping all the process, all that process is important, and that's really what we're focusing on here in terms of equity and policy. You know, it's a little bit like asking your friends to pay for the damage after they drive your car into the ditch, but you ask them to run the errand for you, and you fail to get the brake service on your car, and that's what caused the accident. Yeah, it's unfair. You know, on the surface, if you just look at, hey, my friend drove my car into the ditch, but if you were the one that, you know, got us to that point, then that's not unfair at all. And so when you look at policy, if the court affirms the bankruptcy court's ruling here, it reinforces the policy matter that regardless of how offshore investors do business abroad, if they're going to invest especially millions of dollars into a U.S. enemy, they need to honor the corporate form in government, document their intentions and agreements, and give good legal advice to make sure that they hit deadlines and applicable requirements. Whereas if we give any credence to this position, then just enrichment and incidental benefits applies. How is it the case that on these facts the elements of the doctrine as set forth in Hartford are met? How is this a situation in which he was acting as he would have done in any event, or how is this a situation in which it really happened that Magnus benefited? I mean, it seems the doctrine is focused on whether you are promoting your self-interest to the collateral benefit of someone who has no choice in getting the benefit. Here the whole point was to confer the benefit on Magnus. It's not collateral. It didn't really happen, and it's not something he would have done at his own self-interest if he were not aligned as the controlling member of the LLC. Your Honor, I think that would be true if he had done it, as Judge Smith said, I believe in the prior presentation, as an equity investment. Because then it would have preserved abilities of the other members to recover. And then it would have been focused on preserving value for the benefit of the entity itself. But by not doing it that way and now claiming that this is a debt obligation, it puts him in conflict with the other members. And therefore, I think to harmonize it under the Hartford standard, he's acting as he would have in any instance, regardless of the interests of the entity. I think you have to take the facts as they show up when the alleged incident of unjust enrichment happened. He's already a member. They strike me as kind of unjust enrichment arguments that go beyond the incidental benefits principle, which doesn't occupy the field of unjust enrichment law. But this one doctrine doesn't seem to be the right fit for some of the arguments you're making. Well, again, I think, Your Honor, that goes back to incidental benefit really is a subspecies of, was there unjust enrichment? And you may have other arguments, you know, if this were remanded, you may have other arguments as to why you should still win. But I'm just not sure the bankruptcy court latched onto the right tool here. Well, and I think absent the testimony from Chang, then that may very well be the case. But it made it crystal clear that what he was doing here was designed to benefit himself. And, yes, that may also expose him to breach of fiduciary duty allegations. And, in fact, my clients have been involved in litigation preceding the bankruptcy, asserting exactly that, that he's in other actions or breaches of his fiduciary duty. Counsel, let me ask you this, following what Judge Collins has suggested. If you were the bankruptcy judge and you could decide this matter ab initio, what would your ruling be? What would you base it on? Would incidental benefit play a role, or is there some other legal doctrine that would have been a better fit? I don't know about subjective ranking, but I take the court's point. And I can say I think a very clear way that we prevail on this that doesn't really have anything to do with incidental benefit is the standing issue that Shanxi gave a long point, which is where we started on this claim of objection. Because originally the claim was filed, we objected, and the response was, Tang holds an assignment of the rights of Shanxi, and that assignment was dated the day before they filed their response to our objection. And we said that's high barred. You missed the bar. Shanxi had to file a claim. They apparently agreed with us and immediately abandoned that. And then in post-first hearing briefings is when we got the unjust enrichment argument. But even there, I think the Shanxi issue is determinative, as is statute of limitations. So on the standing point, you know, Tang says he gave the funds to Shanxi. We assume that to be true for purposes of the procedural posture we're here today. But then that means that Shanxi's unjust enrichment claim, and they're just as barred under the bar date in how things work in bankruptcy court as they would be from asserting, you know, a contractual obligation based on the assignment. And I think the way to think about that is what if instead of Tang providing the funds to Shanxi, Shanxi had went to a bank and borrowed that money. And then the same things had happened. The letters of credit had been drawn. I don't think anyone would suggest the bank can go ahead and assert an unjust enrichment claim against not even just Magnus but the debtor here, which is post yet another assignment that Tang perpetuated. Because there's no connection between those parties. It wasn't, you know, the bank's fund. The bank's remedy is against Shanxi, who he gave the money to. That's the same thing we have here, the fact that Tang's affiliated with Shanxi. He shouldn't change that. And again, corporate form, I think the right focus on corporate form here is exactly that, that it was Shanxi, it was not Tang, and Tang may treat Shanxi like his personal piggy banker or whatever the custom is in China, but that's not the law in this country. The law in this country is that we respect the corporate form, and if Shanxi was the one that provided the money, then the claim has to be Shanxi's. And so I think that's a strong basis. The other very strong basis that's very straightforward is statute of limitations. Tang agrees that the claim is time-barred if it ran from when the loan was taken out from him in vain. Do we have that issue before us, or was that just before the bankruptcy court? It was before the bankruptcy court. I think it's in the record sufficiently because it was briefed below, and it's been briefed at both levels of appeal, that the court could certainly affirm on that ground, even if it decided that it disagreed with the court's application of incidental benefit principle. I think the same is also true for standing. It's been fully briefed. It was raised at all levels, both the bankruptcy court and both levels of appeal. And it's straightforward. It's either or. Either the claim arose when the loan was accepted, which is time-barred under the two-year statute of limitations, or it was when the letters of credit were drawn, which seems to us to be the right answer. That's when, if you look at California law, which is the current rule of unjust and rigorous statute of limitations and statute of limitations generally, it says that it needs to be when the claim is complete with all of its elements, wrongdoing, harm, and causation. Because the draw happened after the assignment, that doesn't help them, and so they argue, oh, it must be when the loan defaulted, which was in this intermediate period. They say it had to have been May of 2015, although there's nothing in the record to show that. It fails to have purpose. If I understand your answer, then it is that what the bankruptcy court should have decided this on was the statute of limitations and the standing issue. Incidental benefits is sort of kind of okay, but not what you would have used, right? I wouldn't characterize it that way. The court would probably appreciate it. I think the bankruptcy court was right on incidental benefit as well. I took the court's question to be, is there a simpler, more straightforward ground? Personally, yes, I think that standing or statute of limitations would be more straightforward, but we advanced the incidental benefit argument, so it's not like the court came up with that out of nowhere. We also fully believe that that's an excellent ground. If we affirm the district court, what happens next in this case? Great question, Your Honor. So we actually have two plans on file, chapter 11 plans, one that Chang filed, one that my clients are now the proponents of. They're set for hearing in January, and either the court will affirm those or confirm them, and the money will be distributed according to them. Our plan relies on the state of play as it is today, which is that this plan for the dynamic bank portion has been disallowed. Their plan leaves everything open until there's been a final resolution of this and all of the state court litigation. No matter what, Chang's going to get the majority of the money here. Even our plan, which takes the least conservative, I think, most liberal view of where we see things, still will provide him with about $10 million of the 21. And that's because there's some debt that comes up first. That's right. It's not 65%. There's some debt claims that are prior. Let me ask my colleague, does either have additional questions? No. All right. Thank you, Mr. Schultz. Thank you, Your Honor. So now we'll hear Ms. Horwitz in the remaining time. Your Honor, just a couple of quick points on the incidental benefit issue. I do want to take issue with my colleague's representation of this as asking you to create new California law. That's not what we're asking you to do. We're asking you to apply the existing law in the manner set out by the California Supreme Court, and if necessary, to take into consideration existing California law on member manager duties and responsibilities. I'm hearing the case that you cite from California Supreme Court is what again? That's the Hartford case. Hartford, okay. Hartford Casualty Insurance v. J.R. Marketing. I will briefly touch upon the alternative theories that Mr. Schultz has advanced here but were never really addressed by the bankruptcy court or even fully fleshed out. Before you do that, let me just ask you, if you had your druthers, what would you like us to rule? And what would the result be in this case? The result in this case, from my standpoint, would be that the incidental benefit principle was improperly applied and that the bankruptcy court erred in disallowing the $30 million claim. The $30 million should be found to have been properly asserted and allowed to go forward. Okay. And if we overrule the district court, that's what will happen from your perspective? I guess depending on the scope and structure of your court. And what about the issues raised by Mr. Schultz in terms of statute of limitations and standing? Are those still before the, would they be before the court? Again, I believe it would be contingent upon your order. A couple of things I'd like to note up front is that Mr. Schultz and his clients had the opportunity to do discovery and flesh this out fully and they decided to forego that. And they said, let's just move forward, assuming all of the allegations put forward by time along. And so now we are in a situation where because of their decision, the record is perhaps not exactly what we would have had otherwise. And I would submit that I think that that ought to be, it ought to adhere to the benefit of my client, based on their decision of how to proceed procedurally. Nonetheless, I think that reasonable inferences from the record that does exist show that the claim arose, the claim on the $30 million arose against when the ability to foreclose on the loan occurred. And that had to have happened before August of 2015. And if you look at the contract, payments were supposed to be made every three months. So the reasonable inference is that the payment that was due in May of 2015 never occurred. So there is no statute of limitations. If we were to affirm the district court, is Mr. Schultz right that your client would still receive a majority of the money from the entity? I would have to defer. I do not represent my client in bankruptcy. So I cannot speak to exactly. But he would presumably get a fair amount of money out of it. Is that a fair statement? He would, but not as much as if he were required to say goodbye to the $30 million that he generously put up, so that everyone else would eventually have some real property to liquidate and have asserted their claims against. Let me ask my colleagues, does either have additional questions? Thank you, counsel. This is a very complex case, as you know, and we appreciate your arguments. Very helpful. The case is submitted and the court stands in recess for the day. I should say adjourned, not recessed.
judges: Kelly, SMITH, COLLINS